IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                              Case Nos.:  5:13cr33/MW/HTC
                                                            5:17cv26/MW/HTC

KENNETH F. WILLIAMS

---

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Kenneth Williams's Petition
under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.    ECF Doc. 100.
The Government filed a response in opposition, and Williams filed a reply.    ECF
Docs. 107, 108.    The case was referred to the undersigned for the issuance of all
preliminary orders and any recommendations to the district court regarding
dispositive matters.    *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and
Fed. R. Civ. P. 72(b).    After reviewing the record and the arguments presented, the
undersigned recommends the § 2255 petition be denied without an evidentiary
hearing because Williams's claims of constitutional error in his sentencing, a *Brady*
violation, and ineffective assistance of counsel are unsupported by the record and
relevant case law.    *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Williams was convicted after a jury trial of two counts of distributing crack cocaine and one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).    ECF Docs. 42, 82-83.    The charges stemmed from two controlled purchases of crack cocaine by a confidential informant, and the subsequent execution of a search warrant at Williams's residence. Williams received a Chapter Four enhancement under the United States Sentencing Guidelines ("USSG") as a career offender because he had at least three prior convictions for controlled substance violations under Fla. Stat. § 893.13 and one prior conviction for a crime of violence.    Thus, Williams was sentenced to a term of imprisonment of 294 months, which was within the guideline range, based on an offense level of 34 and criminal history category of VI.

Williams appealed his convictions and sentence, raising several grounds for relief.    ECF Doc. 93.    The Eleventh Circuit rejected each argument in turn and affirmed on February 26, 2016.    Williams timely filed his § 2255 petition on January 16, 2017.[1]    He asserts four grounds for relief.    In his first two grounds, Williams claims that his sentence should be vacated because under the Supreme

---

[1] A *pro se* prisoner's pleading is deemed filed at the time it is placed in the prison mailbox or delivered to prison authorities for mailing.  *See Houston v. Lack,* 487 U.S. 266, 276 (1988) (holding that a pro se inmate's notice of appeal was filed as of the time he placed it in the prison mailbox, thus creating the "prison mailbox rule).

Case Nos.: 5:13cr33/MW/HTC; 5:17cv26/MW/HTC

Court's decisions in *Descamps v. United States,* 570 U.S. 254 (2013), *Mathis v. United States*, 136 S. Ct. 2243 (2016), and *Johnson v. United States*, 135 S. Ct. 2551 (2015), several of his prior convictions no longer qualify as "controlled substance offenses" or "crimes of violence" under the career offender provision of the Sentencing Guidelines.    In his third ground for relief, Williams alleges the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), in failing to disclose impeachment information on its confidential informant.    In his fourth claim, Wilson raises several grounds of ineffective assistance of counsel at trial.

## II.    SECTION 2255 LEGAL STANDARD

A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    To establish a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."    *See Murray v. Carrier*, 477

U.S. 478, 496 (1986).

## III.   GROUNDS ONE AND TWO: CAREER OFFENDER STATUS UNDER THE SENTENCING GUIDELINES[2]

The Sentencing Guidelines provide for a sentencing enhancement for defendants who are "career offenders."  *See* U.S.S.G. § 4B1.1.  A defendant is considered a "career offender" if three conditions are met: (1) the defendant was at least 18 years old at the time of the conviction; (2) the offense of the conviction is a felony that is either a "crime of violence" or a "controlled substance offense"; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  *Id.* § 4B1.1(a).  As stated above, Williams's offense level was enhanced by his career offender status because he had three predicate convictions for controlled substance offenses and one for a crime of violence.

---

[2] The Government also asserts that Williams's claim regarding his career offender status is procedurally barred because it was not raised on appeal.   Indeed, in the Eleventh Circuit's written opinion affirming the judgment, the court specifically noted that Williams did not argue he did not qualify as a career offender.   ECF Doc. 93 at 13.   Because a Section 2255 petition is not a substitute for a direct appeal, issues which could have been raised on direct appeal are generally not actionable and will be considered procedurally barred.   *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   Here, Petitioner has not provided any reasons why he was unable to raise his first two claims on direct appeal, other than his appeal was filed pre-*Mathis*, and further does not allege that he is actually innocent.   *See id.* at 1235.   However, rather than decide this matter on procedural grounds, the undersigned has reviewed the merits of the Petitioner's due process claims and, for the reasons discussed herein, finds that they do not warrant relief.

Case Nos.: 5:13cr33/MW/HTC; 5:17cv26/MW/HTC

### A. Ground One: Williams's Controlled Substance Offenses Can Be Used as Predicate Offenses Under the § 4B1.1 Career Offender Enhancement

In Ground One, Williams argues the United States Supreme Court decisions in *Descamps* and *Mathis* mandate that his sentence be vacated because two of his prior drug convictions used to justify the career offender enhancement under § 4B1.1 no longer qualify as controlled substance offenses.   For the following reasons, this argument is without merit.

As an initial matter, in making this argument, Williams misstates the record. In Ground One of his § 2255 motion, Williams claims that the government only used two prior controlled substance offenses (and a prior crime of violence) to support enhancement under USSG §§ 4B1.1 and 4B1.2.   ECF Doc. 100-1 at 1 (citing his convictions for "Delivery of Cocaine" in 1996CF1783 and "Sell, Delivery of Controlled Substances" in 1990CF1590).    However, according to ¶ 35 of Williams's pre-sentence report ("PSR"), ECF Doc. 63, the Court relied on three prior controlled substance offenses (and one prior crime of violence) to support the §4B1.1 enhancement: Case 1990CF1590, sale or delivery of a controlled substance (PSR ¶ 50); Case 1996CF1783, delivery of cocaine (PSR ¶ 51); Case 2000CF2531, sale of cocaine (PSR ¶ 59); and Case 2005CF1946, resisting arrest with violence (PSR ¶ 62).

Williams either missed the use of his conviction in 2000CF2531 for "Sale of Cocaine" and "Possession of Cocaine" or he does not object to the use of that case as a predicate controlled substance offense under § 4B1.1.    If the latter is true, then even if the two prior drug offenses he complains about did not qualify, Williams would still have had two other predicate offenses (when one includes the prior crime of violence discussed in Ground Two, *infra*) which are sufficient to warrant an application of the enhancement.    *See* U.S.S.G. § 4B1.1(a).

Regardless, Williams's argument that his prior convictions for controlled substance offenses do not qualify as predicate offenses for purposes of assigning career offender status under the U.S.S.G. is misplaced.    Under USSG § 4B1.1, the Court must increase the sentencing guideline of an offender who has two or more offenses which are "crimes of violence" or "controlled substance offenses."    USSG § 4B1.2 defines "controlled substance offense" as follows:

> (b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Fla. Stat. § 893.13 provides in relevant part:

> (1)(a) Except as authorized by this chapter and chapter 499, a person may not sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance.

Williams notes that Florida's statute includes "deliver" and "sell" as a means of committing the crime in § 893(1)(a), while the U.S.S.G. definition does not include "deliver" or "sell".    Instead, section 4B1.2(b) only includes "the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance [for any of those purposes]."    Williams argues that "deliver" is an "alternative means to satisfy the element of possession" which makes the Florida statute broader than the generic controlled substance offense defined by § 4B1.2.    ECF Doc. 100-1 at 8.    Thus, Williams argues that the provisions of Fla. Stat. § 893.13 "criminalize conduct that is not included within the U.S.S.G. § 4B1.2 'Career Offender' Guideline . . . and can no longer be used to enhance Defendant's sentence, due to this delivery element criminalizing a greater swath of conduct than the generic offense."    ECF Doc. 100-1 at 7-8.

Williams takes this language from the Supreme Court opinions in *Descamps v. United States*, 570 U.S. 254 (2013) and *Mathis v. United States*, 136 S. Ct. 2243 (2016), which dealt with a similar issue but in a different context.    As an initial matter, and as will be discussed further below, *Descamps* and *Mathis*, are not applicable because they involve the determination of whether a defendant's prior convictions qualify as "violent felony" predicate offenses under the Armed Career Criminal Act ("ACCA").    Regardless, even if the undersigned were to extend the

analysis in those cases to the facts of this case, Williams still would not be entitled to relief.

In *Descamps*, the Petitioner argued that his sentence should not have been enhanced under the Armed Career Criminal Act ("ACCA") because his prior burglary conviction under California law was based on a California law that was broader than the generic burglary offense enumerated in the ACCA.[3]    The California burglary statute allowed a conviction and the same punishment whether or not the offender entered or remained on the premises "unlawfully."[4]    The generic burglary offense requires unlawful entry or remaining, so the California statute rendered illegal a broader swath of conduct than the generic offense.    The lower courts in *Descamps,* however, went beyond the "categorical approach" of simply comparing the elements of the California statute to the generic offense.    Instead, they applied a "modified categorical approach," and looked to certain court records to determine whether Descamps actually admitted to the elements of the generic

---

[3] The Supreme Court has provided this generic definition of burglary: "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."    *Taylor v. United States*, 495 U.S. 575, 599 (1990).

[4] The *Descamps* Court described the California law as "provid[ing] that a 'person who enters' certain locations 'with intent to commit grand or petit larceny or any felony is guilty of burglary.' That statute does not require the entry to have been unlawful in the way most burglary laws do. Whereas burglary statutes generally demand breaking and entering or similar conduct, California's does not: It covers, for example, a shoplifter who enters a store, like any customer, during normal business hours." *Descamps*, 570 U.S. at 259.

Case Nos.: 5:13cr33/MW/HTC; 5:17cv26/MW/HTC

burglary offense by admitting he unlawfully entered or remained on the premises in each offense.    The district court found that the record of the plea colloquy indeed showed that Descamps had "admitted the elements of a generic burglary" when entering his plea.    Thus, the sentencing court and the appellate court allowed the prior offense to serve as a predicate offense under the ACCA.

The Supreme Court held that this was error.    The Court first found that the California burglary statute was "indivisible", meaning in this context that it contained only a single crime which was simply defined more broadly than the generic offense.    It was thus unlike statutes with alternative elements, some of which could fit within the generic offense and some of which did not.    The *Descamps* Court dubbed such statutes "divisible", and gave the following hypothetical example of one:

> a burglary statute (otherwise conforming to the generic crime) that prohibits "entry of an automobile as well as a building." *Ibid.* One of those alternatives (a building) corresponds to an element in generic burglary, whereas the other (an automobile) does not. In a typical case brought under the statute, the prosecutor charges one of those two alternatives, and the judge instructs the jury accordingly. So if the case involves entry into a building, the jury is "actually required to find all the elements of generic burglary," as the categorical approach demands. *Ibid*. But the statute alone does not disclose whether that has occurred. Because the statute is "divisible"—i.e., comprises multiple, alternative versions of the crime—a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for the generic (building) or non-generic (automobile) form of burglary.

*Descamps*, 570 U.S. at 261–62.    The Supreme Court found that in the case of such a "divisible" statute, a Court may look beyond the mere elements of the statute and consider certain documents, including the plea colloquy and the charging documents, to determine which of the alternative elements were the basis of the actual crime of conviction.

On the other hand, when a statute defines the crime in a broad, but single, phrase (*i.e.*, is "indivisible"), "no uncertainty of that kind exists" and so only the categorical approach can be applied.    The sentencing court simply examines the elements of the prior offense and compares them to the generic offense.    If the elements of the prior offense statute are broader than those of the generic offense, "the inquiry is over", and the conviction cannot serve as an ACCA predicate. *Descamps*, 570 U.S. at 265.    Applying this rule, the *Descamps* Court found that the California law was a single, indivisible statute that could not serve as an ACCA predicate offense.    *Id.* at 264–65.

The Court in *Mathis* further limited the type of alternative phrasing in a state law that would render the state law divisible, susceptible to the "modified categorical approach", and usable as a predicate offense under the ACCA.    The *Mathis* case "concern[ed] a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element."    *Mathis v. United States*, 136 S. Ct. 2243, 2249

(2016).    That is, while the generic offense of burglary requires unlawful entry into a "building or other structure", the state statute in *Mathis* reached a broader range of places: "any building, structure, *[or] land, water, or air vehicle*."    *Id.* at 2250 (emphasis added in *Mathis* opinion).    The *Mathis* Court looked to state law and held that "those listed locations are not alternative elements, going toward the creation of separate crimes."    *Id.*    To the contrary, "they lay out alternative ways of satisfying a single locational element, as the Iowa Supreme Court has held: Each of the terms serves as an 'alternative method of committing [the] single crime' of burglary, so that a jury need not agree on which of the locations was actually involved."    *Id*. (citations omitted).

The Iowa statute at issue in *Mathis* did not set out alternative crimes with alternative elements, some of which crimes fit within the generic definition of the offense.    Instead, the Iowa statute sets out one crime with one set of elements.    It merely provides alternative means of proving the locational element, some of which make the range of prohibited conduct broader than the range under the generic definition of the offense.    Thus, the *Mathis* Court found that the statute is indivisible, and the modified categorical approach should not be used.    Employing the categorical approach and looking just at the elements of the statute, the *Mathis* court found that the state crime was defined more broadly than the generic offense

of burglary under *Taylor,* and so violations of the statute could not be used as predicate offenses under the ACCA.

In the instant case, Williams argues that Fla. Stat. § 893.13 should be likened to the Iowa statute in *Mathis* and should be found to define a single crime with a single set of elements but which provides a list of alternative means for satisfying one of the elements.    ECF Doc. 100-1 at 8.    As such, it should be deemed indivisible[5] and the modified categorical approach should not be applied.    The Court should look only at the elements of the state law, according to Williams.

Further, because the language of § 893.13 allows conviction for "delivery" and "sell[ing]" -- which are not in the generic definition of the offense—Williams argues it proscribes conduct more broadly than the §4B1.2 definition of a controlled substance offense.    Therefore, applying *Mathis*, "the inquiry is over", and section 893.13 cannot be used as a predicate offense under § 4B1.1, argues Williams.    This argument fails for several reasons.

First, Williams's argument runs headlong into express Eleventh Circuit decisions that Fla. Stat. § 893.13 can serve as a predicate offense under the ACCA - - even after *Descamps* and *Mathis.    See United States v. Smith*, 775 F.3d 1262, 1268 (11th Cir. 2014) (holding, after *Descamps*, that the lack of a *mens rea* requirement

---

[5] *See* Williams's Memorandum in support of his petition, ECF Doc. 100-1 at 12 where he clarifies that he is arguing that Fla. Stat. § 893.13 should be found to be indivisible.

Case Nos.: 5:13cr33/MW/HTC; 5:17cv26/MW/HTC

in § 893.13 does not render the statute broader than the generic offense); *United States v. Pearson*, 662 F. App'x 896, 899 (11th Cir. 2016) (applying *Smith* to reject similar *mens rea* argument); *United States v. Pridgeon*, 853 F. 3d 1192, 1198 (11th Cir. 2017) (applying *Smith* to reject similar *mens rea* argument).    Thus, precedent in the Eleventh Circuit forecloses Williams's argument that the range of conduct criminalized by § 893.13 is wider than that incorporated into § 4B1.2 of the guidelines and that any convictions under that statute cannot support the application of the career offender guideline.

In *United States v. Howard*, for example, the petitioner specifically "contend[ed] that the prior panel precedent rule is of little value in his case because this Court has not considered his particular argument that Fla. Stat. § 893.13 . . . criminalizes substances that are not federally controlled."    The Eleventh Circuit rejected that contention, holding that "a prior panel's holding is binding on all subsequent panels" and "a prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel." *United States v. Howard*, 767 F. App'x 779, 784-85 (11th Cir. 2019), *pet. for cert filed*, *Howard v. United States*, 18-9772 (June 24, 2019).    Under the logic of *Howard*, the undersigned recommends declining Williams's invitation to circumvent the precedents of the prior panels of the Eleventh Circuit.

Second, even if not directly foreclosed by precedent, Williams's argument that § 893.13 is broader than the definition of a controlled substance offense under the sentencing guidelines is without merit.    A state offense does not have to perfectly match the generic definition of the offense to be a predicate offense.    All that is required is that the state law not define the crime more broadly than the generic definition of the offense.    *Taylor v. United States*, 495 U.S. 575, 599 (1990) ("If the state statute is narrower than the generic view . . . there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary.").

Here, the heart of Williams's argument is that the definition of a "controlled substance offense" in § 4B1.2 does not include the words "delivery" or "sell" while the Florida statute does.    However, this does not render the Florida statute broader than the Guidelines definition.    Section 4B1.2 includes in the definition the words "distribute" and "dispense."    One cannot deliver or sell something without also distributing it or dispensing it.    On the other hand, one can distribute or dispense something without selling it (by giving it away for free).    And when one distributes or dispenses something, one necessarily also delivers it.    Thus, the § 4B1.2 definition of a controlled substance offense is actually broader than Fla. Stat. § 893.13's definition.    The rule of *Descamps*, *Mathis* and *Taylor* prohibits a

sentencing court from using a state law like § 893.13 as a predicate offense only in the opposite circumstance, when the state law is broader than the generic definition.

In sum, even if the reasoning in *Descamps* and Mathis applied, and even if Williams is correct that § 893.13 is "indivisible" and the Court should apply the categorical approach and only examine the elements of the statute, he is wrong that § 893.13 proscribes a range of conduct more broadly than the generic offense instruction in § 4B1.2.    Thus, the district court properly used Williams's convictions of § 893.13 to enhance his sentence under the career offender enhancement of §4B1.1.

### B.  Ground Two: Williams's Crime of Violence Offense Can Be Used as a Predicate Offense Under the § 4B1.1 Career Offender Enhancement

Williams also argues that the career offender enhancement requirements are not met because his 2005 conviction for resisting arrest with violence in Case 2005CF1946, PSR ¶ 62, no longer qualifies as a predicate offense under § 4B1.1 after *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *Mathis, supra*.    Citing *Johnson*, he argues that "his prior resisting arrest with violence is unconstitutionally vague under the residual clause of the 4B1.2 Career Offender Guideline."    ECF Doc. 100-1 at 12.    The Court liberally construes this to mean that he is arguing that use of his prior conviction for resisting arrest with violence as a predicate offense

under § 4B1.1 is unconstitutional because the residual clause of § 4B1.2 was unconstitutionally vague.[6]

He admits in his petition that he raised this claim protectively, as the Supreme Court had not yet decided *Beckles v. United States,* 137 S. Ct. 886, (2017) which dealt with this issue.    Since the filing of the petition, however, a decision has been rendered in *Beckles*, and that decision is not favorable to Williams.    In *Beckles*, the Supreme Court held that "the advisory Sentencing Guidelines are not subject to a vagueness challenge under the Due Process Clause and … § 4B1.2(a)'s residual clause is not void for vagueness."    *Beckles*, 137 S. Ct. at 895.    Thus, rather than support Williams's argument, *Beckles* forecloses it.    As Williams acknowledged in his reply, unless *Beckles* was overturned, "he has no leg to stand on in this matter." ECF Doc. 108 at 8.

Accordingly, the undersigned finds that the district court's application of the Chapter 4 enhancement to Williams's sentence based on his status as a career offender did not violate his right to due process.

---

[6] Effective August 1, 2016, the United States Sentencing Guidelines have been amended to conform with the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551, 2555 (2015) by removing language in the §4B1.2 definition of "crime of violence" which referred to "conduct presenting a serious potential risk of physical injury to another."

## IV.  GROUND THREE: THE GOVERNMENT DID NOT VIOLATE *BRADY V. MARYLAND*

Williams claims the Government failed to produce exculpatory evidence, which could have been used to discredit its primary witnesses, a confidential informant ("CI"), as required by *Brady v. Maryland*, 373 U.S. 83 (1963).[7]  Under *Brady*, suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.  *Id.*   It is no longer imperative that there be a request for the production of such evidence. *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995); *see also United States v. Scheer*, 168 F.3d 445, 451 (11th Cir. 1999) (material favorable, exculpatory or impeachment evidence must be produced regardless of request).   However, the burden rests with the defendant, not the Government, to show that a violation has occurred.   *United States v. Stein*, 846 F. 3d 1135, 1145 (11th Cir. 2017) (quoting *United States v. Esquenazi*, 752 F. 3d 912, 933 (11th Cir. 2014)).

---

[7] The Government also asserts that Williams's claim is procedurally barred because it was not raised on appeal.  The Eleventh Circuit has recognized that because of the nature of a *Brady* violation, a defendant, through no fault of his own, may not learn that such a violation even occurred until well after his conviction has become final.  *Scott v. United States*, 890 F. 3d 1239, 1250 (11th Cir. 2018).  In his reply, Williams does not appear to contest that he could have brought this claim and instead blames his counsel, stating "defendant had no control over what his counsel argued."  ECF Doc. 108 at 2-3.  While counsel's failure to raise a meritorious *Brady* claim would support an ineffective assistance of counsel claim, it does not make the claim any less procedurally barred.  Regardless, since the claim is without merit, the undersigned does not find it necessary to also address the procedural bar argument.

Case Nos.: 5:13cr33/MW/HTC; 5:17cv26/MW/HTC

To prove a *Brady* violation, a defendant must show that: (1) the prosecution possessed evidence favorable to the accused (including impeachment evidence); (2) the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different, that is, that the evidence was "material." *Stein*, 846 F. 3d at 1145-46 (quoting *United States v. Vallejo,* 297 F.3d 1154, 1164 (11th Cir. 2002)). Evidence is "material" if it is reasonably probable that a different outcome would have ensued with the evidence. *Ponticelli v. Secretary, Florida Department of* Corrections, 690 F. 3d 1271, 1292 (11th Cir. 2012). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *Kyles*, 514 U.S. at 434; *Scheer*, 168 F.3d at 451–52. *Brady* requires disclosure of material impeachment evidence as well as material exculpatory evidence. *See Stein*, 846 F. 3d at 1146 (citations omitted); *Mize v. Hall*, 532 F.3d 1184, 1193-94 (11th Cir. 2008).

Williams cannot establish a *Brady* claim because no exculpatory evidence was withheld. Williams describes the CI as a known drug dealer who was on probation at the time of the indictment and who was working with the Panama City Police and

the DEA to avoid prison and was being paid to do so.    ECF Doc. 100-1 at 13.    He claims the Government violated *Brady* by failing "to produce this evidence."    ECF Doc. 100-1 at 14.    Williams's suggestion that the Government did not provide unfavorable impeachment evidence on the CI is not supported by the record.

To the contrary, at trial, there was abundant testimony about the information Williams now contends was suppressed by the Government.    Even before the CI testified, Special Agent Lammers testified on direct that the DEA paid the CI $1250 for the CI's work, and defense counsel's cross-examination brought out that (1) the CI had worked with not only the DEA but other agencies, (2) he had prior convictions and possible drug use, and (3) he was avoiding prosecution as a result of his work as a CI.    ECF Doc. 82 at 40, 56-58.    This same information was also brought out during the CI's testimony.    ECF Doc. 82 at 170-187.

The CI testified he had prior felony drug convictions, was on probation and had been paid by the Panama City Police Department ("PCPD") to engage in undercover work to avoid additional charges.    On cross-examination, the CI admitted he was not working, and that both the PCPD and the DEA had given him money to do undercover work, some of which he used to pay drug debts.    He also admitted that while working as an informant for the Tuscaloosa Police Department in Alabama, he was selling crack cocaine without the Department's knowledge. Indeed, the pages of the transcript attached to Williams's memorandum in support

of his petition, which includes the CI and Agent Lamars's cross-examination, carries this point home.    ECF Doc. 100-1 at 18-24.

Additionally, the Government has appended to its response the materials it disclosed to the defense, which includes letters dated February 4, 5 and 7, 2014, sent via email from the Government's counsel to defense counsel containing information regarding payments to the CI, a copy of the CI's NCIC report, the fact that the CI had an additional felony drug conviction for which the CI is currently serving a term of probation and for which he ended up serving as a CI for the Tuscaloosa Police, the fact that the CI began working for DEA agents after an encounter with PCPD and documents describing that encounter.    ECF Doc. 107, Exhs. 1-5.    Although Williams claims in his reply that he never received several of these exhibits prior to trial, he admits that his claim based on an alleged *Brady* violation is "moot."    ECF Doc. 108 at 8-9.

William, thus, blames his counsel and, in his reply, attempts to turn his *Brady* claim into an ineffective assistance of counsel claim, arguing that defense counsel failed to share the *Brady* information with him.    ECF Doc. 108 at 9.    According to Williams, had he known the CI "could not be slammed with his drug dealings and arrests on the stand as a surprise defense, and defendant would have been forewarned and taken a plea, not proceeded to trial."    *Id*.    Williams cannot raise a new argument on reply that was not raised in his petition.    *See Parker v. Smith*, 858

F.Supp.2d 229, 233 n.2 (N.D. NY 2012); *see also United States v. Evans,* 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.").    Regardless, his ineffective assistance of counsel claim also fails on its merits as discussed below.

## V.    GROUND FOUR: WILLIAMS DID NOT RECEIVE INEFFECTIVE ASSISTANCE OF COUNSEL

As his final ground for relief, Williams claims his counsel failed to prepare any defense at trial, failed to call witnesses, and failed to properly cross-examine or challenge the Government's witnesses.    ECF Doc. 100 at 8.    Williams complained to the district court about his counsel's performance during an *ex parte* hearing, which took place after the jury's verdict was rendered.    Despite the multiple allegations of error, his claims do not establish a violation of *Strickland v. Washington*, 466 U.S. 668, 686 (1984), either individually or collectively.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland*, 466 U.S at 686; *Williams v. Taylor*, 529 U.S. 362, 390 (2000).    A court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

When reviewing the adequacy of counsel's performance, the court asks "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. A defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted).

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). A defendant must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687). Or, in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04 (2001).

Williams first asserts counsel should have moved to suppress the fruits of the

search executed at his apartment because neither the lease agreement, utility bills nor any of the vehicles parked at the apartment were in Williams's name.    ECF Doc. 100-1 at 3-5.    Counsel advised the court during the *ex parte* hearing that she did not ethically believe there was a legal basis to file a motion to suppress as her client wished.    ECF Doc. 80 at 9-10.    The affidavit in support of the warrant, appended to the Government's response, supports counsel's conclusion because it establishes probable cause for the warrant.    *See United States v. Ventresca*, 380 U.S. 102, 107 (1965) ("[a] search warrant may only issue upon a finding of probable cause"); ECF Doc. 107-6 at 8-14.

To satisfy the probable cause standard, the government must "reveal facts that make it likely that the items being sought are in that place when the warrant issues." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994).    Here, the information in the warrant was based upon Special Agent Lammers's personal knowledge, information from other law enforcement officers, physical surveillance, information from the CI, and a review of the recorded conversations during controlled purchases of crack cocaine.    ECF Doc. 107-6 at 9.    Significantly, the CI had known Williams to reside at the apartment with a friend, and the CI had purchased crack cocaine approximately thirty (30) times from Williams inside the apartment, including during the first controlled buy.    *Id.* at 9-10.    The fact that Williams was not the leaseholder was not fatal to the warrant.

Moreover, the search warrant was signed by a Magistrate Judge, who need only have a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Even if no probable cause existed for the warrant, Williams has failed to show that a motion to suppress would have been successful given the *Leon* good faith exception. *See United States v. Leon*, 468 U.S. 897, 905 (1984) (holding that "courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause"); *Eastin v. Hobbs*, 688 F.3d 911, 916 (8th Cir. 2012) (finding petitioner failed to establish ineffective assistance of counsel for failing to move to suppress evidence even if warrant was not supported by probable cause, where he failed to advance any argument as to why the execution of the search warrant would not fall under the "good faith" exception to the exclusionary rule).

Absent any basis for a viable Fourth Amendment claim, counsel was not constitutionally ineffective. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Simons v. United States*, 683 F. App'x 882, 886 (11th Cir. 2017) (finding that counsel's failure to move to suppress evidence found pursuant to a search warrant was not objectively unreasonable).

In his petition, Williams also complains that counsel failed to investigate the background of his roommate Jarome Foreman and his roommate's mother Joanetta

Cole.   ECF Doc. 100-1 at 3-5.   He maintains that both individuals were involved in drug dealing, presumably suggesting this information could have been used to impeach their testimony at trial.   This argument is without merit because although Cole was listed as a potential Government witness (ECF Doc. 30), neither she nor Foreman testified.   Thus, neither Foreman nor Cole's credibility was relevant. Counsel cannot be ineffective for failing to investigate matters that were not relevant to the case.

Williams's ineffective assistance of counsel claims takes a different turn in his supporting memorandum.   There, Williams argues counsel was constitutionally ineffective because she "failed to call any witnesses" on his behalf.   ECF Doc. 100-1 at 15.   However, he does not identify any specific fact witnesses counsel should have called or explain what difference any such witness would have had to the outcome of the case.   Such allegations are too general and conclusory to support a claim under *Strickland*.

Additionally, Williams contends that counsel should have called "professional witnesses" to challenge Agent Lammers on his ability to see through the darkly tinted windows of Williams's vehicle during the second controlled buy, and that counsel was remiss in not securing a "voice expert" to prove it was Williams's voice on the recordings obtained by the CI.   *Id*. at 15-16.

The record does not support that either type of witness would have helped

Williams's case.    As to the window-tinting expert, Agent Lammers testified he saw Williams and the CI get into the vehicle, that the men were there for approximately one minute, that the CI, who had been searched before his meeting with Williams, subsequently turned over a knotted plastic baggie containing crack cocaine, and that as the vehicle left the scene Lammers observed no one else in the car besides Williams.    ECF Doc. 82 at 101-11.    Thus, the ability to see inside the vehicle was not critical to Agent Lammers's testimony.

Similarly, counsel was not constitutionally ineffective for not calling a voice expert to show that it was not Williams's voice on the recordings made during the controlled buys.    The CI had positively identified Williams as the person he spoke with on the telephone and the person who sold him drugs.    ECF Doc. 107 at Exh. 6.    Special Agents Manna and Lammers physically observed Williams enter the vehicle with the CI, and Lammers observed that there was no one else present. Also, unlike the recording from October of 2012, transaction, the January 2013 recording was clear.    There is nothing in the record that would plausibly suggest that the voice on the recording belonged to anyone other than Williams.

Williams references the *ex-parte* hearing where he complained to the court about counsel's representation at trial and asks this Court to take into consideration the facts presented at that hearing in ruling on this motion.    ECF Doc 100-1 at 17. A review of the transcript of the hearing, however, shows that it is not helpful to

Williams.    Williams makes the same complaints about his counsel as he does in his

petition.    After listening to Williams, the district court stated:

> I don't mean to be flip, but it's not unusual to encounter buyer's
> remorse after the jury's verdict comes back in, and I take with
> something of a grain of salt.    One, I remember your trial, and I thought
> that you had very competent and effective representation during that
> trial.    Particularly in light of the facts that were presented to the jury.

ECF Doc. 80 at 8.    The district court thus denied Williams's motion for

appointment of new counsel.    Nothing in the transcript of the hearing supports

Williams's § 2255 petition.

Williams changes his *Strickland* argument once again in his reply brief.

There, Williams argues for the first time that counsel was ineffective because she

did not "produce all the evidence to Defendant to prove a trial was far from a

worthwhile option."    ECF Doc. 108 at 10.    He claims counsel's "lack of advice

induced a not guilty plea, and defense counsel prejudiced Defendant and forced him

to trial."    *Id*. at 13.    To the extent this claim is properly before the court, it is

without merit.

A defendant's Sixth Amendment right to counsel "extends to the plea-

bargaining process."    *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri*

*v. Frye*, 566 U.S. 133, 138 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771

(1970)).    "If a plea bargain has been offered, a defendant has the right to effective

assistance of counsel in considering whether to accept it."    *Lafler*, 566 U.S. at 168.

Thus, the two-part test articulated in *Strickland* applies to claims that counsel was ineffective during plea negotiations. *See id.* at 163 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer).

Williams is not entitled to relief on this claim under *Strickland*. Defendants asserting ineffective assistance in plea negotiations must demonstrate a reasonable probability that but for counsel's ineffective assistance: (1) the Defendant would have accepted a plea offer and declined going to trial; (2) the plea would have been entered without the prosecution canceling it or the court refusing to accept it; and (3) the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 134 (2012). Williams has not provided anything more than speculation as to these requirements.

First, there is no evidence that Williams was offered any plea. Thus, Williams cannot show that it would have been more favorable to him and cannot argue that the Court would have accepted it. *See Lafler*, 566 U.S. at 164 (holding that it is the defendant's burden to demonstrate a reasonable probability of the Court accepting a plea that is more favorable to him than the sentence he received). Second, Williams fails to present anything other than mere speculation that he would have entered a guilty plea in lieu of a trial. This is his burden. *Frye*, 566 U.S. at

137 ("defendants must demonstrate a reasonable probability that they would have accepted the more favorable plea offer had they been afforded effective assistance of.").

Rather than demonstrate a willingness to enter a plea, the focus of Williams's petition is that the outcome of the trial would have been different had it not been for his counsel's deficient performance. For instance, Williams asserts that "counsel completely dropped the ball and laid down at trial." ECF Doc. 108 at 14. This description, however, is belied by the record which shows counsel engaged in pointed and pertinent cross-examination of the Government witnesses. Similarly, Williams's allegation that counsel failed to offer any other explanations for how the CI obtained the crack cocaine or cast any doubt on the Government's case is mistaken. During closing, counsel skillfully emphasized the weaknesses in the Government's case as to each of the three counts. She focused on the CI's status as a known drug dealer with a desire to get out of trouble with the PCPD, and who was making money working for law enforcement despite continuing to engage in illegal activity. *See* ECF Doc. 83 at 337-345. The defense theory was that the Government's case had not been proven beyond a reasonable doubt because of these weaknesses.

Williams has not shown that his experienced trial counsel performed deficiently in any respect, much less that counsel made errors "so serious as to

deprive the defendant of a fair trial, a trial whose result [was] reliable." *Lockhart*, 506 U.S. at 369.    Therefore, he has not established a violation of *Strickland*.

## VI.    NO EVIDENTIARY HEARING IS NECESSARY

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008).    Thus, not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

An evidentiary hearing is not necessary to resolve Williams's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877. For the foregoing reasons, the undersigned finds that Williams has not shown that any of the claims raised in his 28 U.S.C. § 2255 petition have merit. Therefore, his petition should be denied.

## VII. A CERTIFICATE OF APPEALABILITY SHOULD BE DENIED

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should

issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VIII.  CONCLUSION

Based on the foregoing, it is respectfully RECOMMENDED:

1.    The Motion to Vacate, Set Aside, or Correct Sentence (ECF Doc. 100) be DENIED.

2.    A certificate of appealability be DENIED.

At Pensacola, Florida, this 5th day of December, 2019.


/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.